Mr. Hansen brings this appeal from the partial denial of his motion to compel arbitration of plaintiff's claims against him arising from an alleged assault here in St. Louis at an AFLAC work conference in 2018. Mr. Hansen is asserting third-party beneficiary status under an arbitration provision in an associates agreement that plaintiff, and I'm going to refer to plaintiff as Ms. Anderson because Mr. Anderson's claim is derivative of his wife's. He's claiming third-party beneficiary status under the arbitration provision in the associates agreement that Ms. Anderson signed as an associate or independent contractor of AFLAC, which is Mr. Hansen's former employer. As plaintiff acknowledges in the complaint, the associates agreement governed her relationship with AFLAC. And the relevant language in the arbitration provision says that the parties agree that any dispute arising under or related in any way to this agreement to the maximum extent allowed under the FAA. Jeffrey Hansen Well, the first question that jumps out to me in reading this case is how does the fact scenario here arise under or is related to this agreement? And not just the arbitration, but obviously it's that entire agreement that the parties submit. Ms. Anderson Yes, yes. Jeffrey Hansen How is this related to AFLAC business I suppose would be a... Ms. Anderson When you look at the language in the arbitration provision, it covers... It has not only that really expansive related in any way language, but it also has a range of disputes that it explicitly covers. And that includes disputes arising under federal, state, or local laws, ordinances, statutes for prohibiting anti-competitive conduct, improper business practices, and sexual discrimination and harassment, not just sexual, I'm sorry, harassment and discrimination of all kinds. Jeffrey Hansen It doesn't have to be related to the agreement. And my question is how is it related in this case? Ms. Anderson It doesn't because it doesn't have to be specifically in the agreement because this arbitration provision also covers... Jeffrey Hansen I didn't say it had to be in the agreement, but it has to be related to the agreement. And how is the alleged sexual assault connected or related in some way to the agreement? Ms. Anderson The alleged assault occurred at a work conference that Ms. Anderson alleges she was invited to based on her strong performance with AFLAC. And she says that it occurred at the work, at the hotel where AFLAC was housing the participants. And although plaintiffs argue in their brief that the incident has only, that their claims have only an incidental or attenuated connection to the agreement, they made a much different claim to AFLAC in the demand letter that's at pages 27 and 28 of our addendum. That letter says that Mr. Hansen assaulted her at an AFLAC galaxy group meeting in St. Louis. She told AFLAC that she had claims against it for negligent hiring, training, and supervision, and for Title VII violations. Mr. Hansen But she hasn't made those claims against the defendant in this case. Ms. Anderson But she was, that's correct, Your Honor. Her claims are different, but the claims that she made against AFLAC tied her status as an independent contractor of AFLAC to the allegations. If I come out of this courthouse and I'm assaulted and somebody steals my purse, I don't have a claim against the tortfeasor's employer unless I have a color of a claim that the incident was work-related. To allege negligent supervision against AFLAC, plaintiff was basically alleging that AFLAC, as Mr. Hansen's employer, had the duty, right, and ability to control his actions. And the same with her, the allegation on sexual harassment. The demand letter says that she had already complained, made a complaint to AFLAC of harassment based on the alleged assault. One of the elements of a hostile work environment claim is that the conduct at issue affected a term, condition, or privilege of her employment. So she tied the incident to the, she tied her allegations to her employment with AFLAC. And I think one thing of note, one of the cases that the district court relied on heavily, the Doe versus Princess Cruise Line case from the 11th Circuit. The claims in that case against Princess Cruise Line weren't for the alleged assault itself. In fact, the court said at 657 F3rd at 1219, all five of these claims include, involve factual allegations about how the cruise line and its officials treated Doe after learning that she had been raped, including keeping her on the ship against her will, denying medical attention, and allegedly destroying the rape kit. So she wasn't going after the employer based on the employment relationship. She was basically doing it as a passenger on the cruise line and saying, you know, you did all these things after the fact. But in this case, Ms. Anderson wrote this demand letter to AFLAC saying, you're responsible for this. It's not, plaintiffs emphasize that the allegations, the claims that are stated in the demand letter are not based on vicarious liability. But as the Missouri Supreme Court said in the Coomer versus Royals, Kansas City Royals baseball club case that we cite in our case, it's not, a claim for negligent supervision isn't strictly imputed liability, but it's basically the same thing because you're saying one defendant is liable for the acts of another. So if AFLAC was liable as an employer, this was work related. Counsel, I'd like to turn to the waiver issue. What factual findings did the district court make regarding when Mr. Hanson knew of his arbitration rights? Well, I think that the district court's opinion betrays a little bit of lack of uncertainty regarding when he knew of his right to arbitration. And that was the reason for my question, because under a clear error standard of review, what is this court supposed to do with a finding that he'd likely knew? Yeah, I mean, to me it seems like it was almost a misapplication of the law, rather than an error in fact. But I think what happened was that the district court wasn't concerned about tying down actual knowledge on the part of Mr. Hanson, because the court went on to say that there were no actions taken inconsistent with his right to arbitration, and that the court didn't reach the prejudice issue. So I think the court- So there was a legal conclusion that there was no waiver, but the factual findings were rather unclear. I think when I say it was almost an error of law, I'm saying that the court appeared to apply an imputed knowledge or constructed knowledge or notice kind of requirement, which this court has never, we couldn't find an opinion. And the plaintiff hasn't cited any case where anything less than actual knowledge suffices to find waiver. So the court said it appears the defendant likely became aware of his right in November when he received the unsigned disclosures, but then the court noted, these versions were apparently unsigned, however, and defendant did not obtain executed copies for another five months. And then in the conclusion on page 12 of the order, the court said, it is determined the defendant did not waive his right to compel arbitration by allowing six months parentheses at most to expire between his supposedly becoming aware of the arbitration agreements and filing this motion. So again, I think the court was less concerned with pinning down and didn't really apply an actual knowledge standard because the court went on to find that there were no inconsistent acts such that there had been a substantial invocation of the machinery of litigation. Turning back to the, whether the claims fall within the scope of the arbitration agreement, I'd also like to point out, in addition to the demand letter that plaintiff sent to AFLAC, she subsequently entered into a settlement agreement with AFLAC regarding her various potential claims against AFLAC related to the August 2018 incident. So again, she settled claims with AFLAC based on this incident. And she released, among other claims, any claims arising out of her or in any way connected with her independent contractor relationship with AFLAC, including claims for emotional distress, for personal injury of any kind, and for harassment. And again, one of the examples that, the specific examples that's covered in the arbitration provision is claims for emotional distress. So it's not just, the arbitration provision did not just cover contractual claims. And I know that it says related in any way to the agreement, but I think the way that it's worded, you have to look at, this arbitration provision covers the employment relationship with AFLAC. Because you would. If I understand your argument correctly, your client's claim to be able to arbitrate is that he is a third-party beneficiary. That's correct, Your Honor. Would that not require that he have the same claims made against him that are made against AFLAC? I don't think so, Your Honor, because there are two sentences in the arbitration provision that cover third-party beneficiary enforcement. And the first sentence deals with disputes between AFLAC and the associate. In other words, the parties to the associate's agreement. And that's the sentence that has that same allegations language in it. It's agreed that in any dispute between the parties, all past and present employees of AFLAC, such as Mr. Hanson, who are alleged to be liable or may be liable in any manner to either party based upon the same allegations made against a party to this agreement, are intended to be third-party beneficiaries of this agreement with full rights to enforcement. These allegations are not the same. So I think that this provision, that sentence that I just read sort of inartfully, covers disputes between AFLAC and the plaintiff. It doesn't cover disputes between the plaintiff and the former employee, such as Mr. Hanson. There was no dispute between plaintiff and AFLAC when this lawsuit was filed. Her claims against AFLAC had been resolved about a year before this suit was filed. So the second sentence dealing with third-party beneficiary rights addresses the specific situation here where there's a dispute between an associate and a former employee. And that sentence says, associate also understands and agrees that regardless of whether AFLAC is a party, this arbitration agreement shall be applicable to any dispute between any associate and any past or present employee. If we had a different scenario instead of the alleged intentional tort, if they'd been at the same hotel because they're attending this conference and the appellee is walking out of the hotel and the appellant drives out of a parking area and strikes her accidentally with a vehicle, you're saying that claim would be covered by this arbitration agreement as well? I think that there's, that's not the situation we have here, but I think it would depend on how she treated it. If she told AFLAC that that car accident was the result of, that they negligently supervised Mr. Hanson and that they had the right and ability to control his actions, then I think there would be a claim. You know, a much more attenuated claim would be if they happened to shop at the same grocery store and that the car accident occurred there. But the fact that it was, they were both at the hotel for this conference makes it more likely that it falls under, especially given the liberal construction to the arbitration provision under this court's precedent. During your rebuttal time, you can continue if you like or you can reserve. I'll reserve. Thank you. Mr. Pleskov. Good morning, your honors. May it please the court. My name is Justin Pleskov and I represent the Appalese, Katherine Anderson and Jason Anderson. At its core, arbitration agreements are contracts and are only enforceable against a party who is so consented. Thus, initially, this court must determine whether Ms. Anderson assented to the claims asserted against defendant being litigated in arbitration. She did not. The claims asserted here, like those in Princess Cruz, are, quote, not an immediate foreseeable result of the performance of the party's contractual duties. And thus, it does not relate to the contract. Moreover, the claims on appeal are maintained without reference to the 1099 contract. That's Licton v. Morse. There are a few key facts that dictate why this case is not subject to arbitration. One, there is no direct working relationship between Ms. Anderson and Mr. Hansen. Mr. Hansen was an executive who worked in Minnesota. My client was a 1099 independent contractor who sold insurance for Aflac in Colorado. All of the facts supporting the claims arose while neither party was working. Isolated in one night's events. This is distinguishable from the cases cited by appellants. Counsel, that may all be true, but I thought that the standard was, when you had an arbitration clause that is this broad, that the underlying factual allegations merely need to touch on matters covered by the arbitration agreement. Isn't that really the legal standard? Your Honor, we don't think that they actually touch on it whatsoever. And we don't think that that's the precise legal standard. We think that the standards cited by the 11th Circuit and the 5th Circuit, and as articulated by the Michigan Supreme Court, are what's controlling here. Particularly related to per Princess Cruz means, quote, some direct relationship. And per the 5th Circuit in Jones v. Halliburton, related means, quote, significant relationship to the contract. Now I will concede, if you look back at our complaint, that there were references to this 1099 contract. But the reason for that is that there was a claim that we had in this case that is not subject to that appeal. That claim was for tortious interference of contract. And as well concede, that claim did relate to Ms. Anderson's contract. And so you will see in our statement of claims, in the complaint that we filed in the district court, there are references in that statement of claim only relating to the breach of, the tortious interference of contract that referred to that 1099 contract. All of the other claims here are maintained without any reference to the contract. Well, does it matter that it was only one? I mean, would that not bring it potentially within the arbitration agreement? That there was only one reference? Right, that there was only one claim. If there's a claim at all that is based on her relationship to Aflac, his relationship to Aflac, and their mutual, or they're not mutual, but their independent agreement to this very broad arbitration language. Thank you for the question, Your Honor. We actually think that it's important that the court parse out those issues, just as the district court did here in its well-reasoned opinion, and just as Princess Cruz did. In Princess Cruz, they had a very factually similar scenario, and they said, well, five of your claims, and excuse me if I get the number of claims wrong, but a number of the claims were sent to arbitration, a number of the claims did not arise out of or relate to the contract. And the court was able to parse those claims, just as I think the court should be doing here. So it doesn't have to be all or none. It doesn't have to be all or none. And we think that particularly Princess Cruz is a great case for this court to be following, because of how broad that arbitration clause was. And the facts were so similar here. Counsel, I guess I need some clarification. Are you asking us to apply a different standard than the Eighth Circuit has applied previously, this touch-on standard? You're asking us to apply something from another circuit? No, Your Honor. I'm actually, I'm not asking you to apply something from a different circuit. I believe that you can follow Eighth Circuit precedent. However, there are cases in other circuits that more similarly align, and I think that the, although it's a similar analysis that the court has applied here, and courts have been applying in other cases where sexual assault was an issue. I think that those cases and the Eighth Circuit precedent apply here. And in particular, there is, in the Palm case, the court did touch on that analysis that's suggested by Lichten v. But it, based on the facts of the case, but it did consider whether the claims would persist in the absence of the financial arrangements, and in doing so, appear to agree that it's required that the claims actually relate to, refer to, and touch on the contract issue in order to be related to and arise from. Here we think that the contract is so attenuated from the circumstances of somebody being raped in a private hotel room, and to correct my opposing counsel here, this is not a hotel room that was provided by Aflac. This is an independent contractor who was there on her own dime, rented that private hotel room by herself, and had an intruder who could have been any intruder. It did not matter that he was from Aflac. It did not matter that the relationship was connected because of Aflac. This was somebody who was uninvited, came into a private hotel room, and raped her. That is not related to the 1099 independent contractor agreement that she had with Aflac. I was going to ask whether there were some unresolved facts. Who paid for her room? Whether the bar where she met Hanson was open to the public or closed for the event, and whether her presence was encouraged or required as part of her work duties? Well, Your Honor, I could answer a few of those questions, and I already answered the one. She did pay for the hotel room herself. She was an independent contractor. She's not an employee, which we think is a very important fact here. In a lot of the cases cited by opposing counsel, they refer to all of these cases where the standard is that it arise under or relate to employment. This is not an employment relationship. This is somebody who was invited there, yes, by Aflac, and so she was in St. Louis. We can see that for this work conference. But there were other people from other companies who could be invited to this as well. This is where Aflac was looking for its people who it wanted for its next generation of becoming executives of the company, but her contract was not as an executive of the company. Her contract was a 1099 independent contractor. This was at an open bar. Anyone could have gone to. Aflac was not buying their drinks at this bar. But importantly, the main events that happened here and that created these claims were based in a private hotel room here in St. Louis that was not rented. What facts underlie your claim for tortious interference? That was based on, well, it was based on two things. Really, we think that there was a split in those claims. One, it was based on her current contract that she had as a 1099 independent contractor and the theory that by raping Ms. Anderson, Mr. Hanson, tortiously interfered with that contract, but also with her prospective business advantage and prospective contract with Aflac in that she was trying to, and the entire reason why she was in St. Louis was she was trying to become an employee of Aflac at the time, and she aspired to become an executive of this company. And so the theory was that really a lot of that tortious interference was based on a prospective business advantage, not just based on her current contract. But that claim is not before the court. Counsel, this may be another way of asking a similar question, but why doesn't Anderson's demand letter to Aflac show that the allegations touch on matters covered by the arbitration clause? Isn't that your biggest hurdle? Thank you, Your Honor. I appreciate that, and I don't see that as our biggest hurdle whatsoever. First of all, the Title VII claims that are alleged in that demand letter, let's all be clear. Ms. Anderson had no Title VII claims arising under or relating to her 1099 contractor agreement because she was not an employee. And employees cannot sue, or if somebody's not an employee, you can't sue a non-employer under Title VII. Title VII only covers employees. Her claims, her Title VII claims, were based on this idea of being promoted, and that it was an application process. That doesn't, and our argument would be if we were standing here today and suing Aflac, we would be saying that those claims didn't arise under or relate to our 1099 contract because as a 1099 contractor, you don't have any rights under Title VII. All of the claims against Aflac were either based on this idea that she was going to be promoted, and based on Aflac's own conduct. They were not based on Mr. Hansen's conduct. And as noted in the contract, I see that we're running through our time quite quickly here. As noted in the contract, and I appreciate that Your Honor has caught on to this language. You can't use your time any better than to fully respond to a question. Did I answer your question? I apologize if I moved on too quickly. Yes, thank you. And moving to this third-party beneficiary, and I appreciate that Your Honor has latched on to this language, it's a requirement that it be based upon the same allegations. We think the district court erred in misconstruing that language. Every word of a contract is important. Aflac wrote that same allegations requirement in there. It could have said same or similar. It could have just said similar allegations. It did not. It said same allegations. The same allegations alleged against Mr. Hansen cannot be brought against Aflac. And we think that that's dispositive here. We also think that in looking to the language of the 1099 contract, it's important that what the contract does, the arbitration provision particularly, it narrows for third-party beneficiaries. Now, the appellants would like this court to rule that there are no requirements of these same allegations being alleged between Ms. Anderson and Mr. Hansen. To read the contract that way, this court would also have to find that it doesn't have to relate to the contract, because dispute in that final clause of the third-party beneficiary language has a little D. It's not a defined term. And thus, the contract would have to be read as intending to bind Aflac 1099 contractors in any dispute. It doesn't matter whether it arises out of or relates to the contract. Be sent to arbitration. That would include a car accident. That would include negligent claim. That would include if somebody came over to your house and broke an item in your house and you wanted to sue them, completely unrelated to the 1099 contractor. We don't think that that's what's intended here. We think that that leads to an absurd result. And we think that it's necessary that this court hold otherwise in that and construe all of the language in the contract to give every word its meaning, particularly the regardless of language, and dispute with a capital D. I would like to note that we do actually believe that the precedent of the Eighth Circuit does hold that constructive notice is all that's required under a waiver analysis. These issues came up in appeal, and we were a little bit taken aback by the citation to stifle from the Eighth Circuit in the reply brief. We don't believe that that court rejected that constructive notice is sufficient. And there is prior precedent, although it relies on state law, where the Eighth Circuit in conducting its waiver analysis relied on constructive notice. And we believe that we're happy to supplement the authority before the court. The citations are Physical Distribution Services v. R.R. Donnelly, that's 561 F3D 792, and Great Plains Real Estate Development v. Union, 536 F3D 939. In closing, I'd like to note that this case is extremely unique. Our nation, in overwhelmingly bipartisan manner, has declared a new law in public policy of sexual assault not being subject to arbitration, effective March of this year, in the Ending Forced Arbitration of Sexual Assault Act. In recognizing the public policy ending arbitration in sexual assault cases and precedent from this court, as well as the Fifth and Eleventh Circuits, while relying on the language of the contract and the facts of this case, this court should hold that rape does not in any way relate to Ms. Anderson's 1099 contract, where it occurs in her private room, outside of work hours, and unrelated to any work-related performance or tasks. Thank you. Thank you, Mr. Pleskov. Your Honors, I would just like to note that the amendment to the FAA that opposing counsel mentioned was effective March 2nd of this year, for claims arising after March 2nd, I believe, of this year. The plaintiff's claim here would have accrued in August of 2018. So the court's liberal construction of arbitration provisions applies in this case. I'd like to address something that Judge Gras noted about asking whether, plaintiff was asking that some different standard other than the simply touch matters covered by the arbitration provision is being asked for here. And the Fifth Circuit and the Eleventh Circuit both required a direct requirement or a significant, I'm sorry, a direct relationship or a significant relationship between the plaintiff's claims and the employment agreement. This court has never held that. And in fact, the Fifth Circuit in Jones and the Eleventh Circuit in Doe and the Ninth Circuit in the state XREL Welch versus my left foot children's therapy case that plaintiffs cite, all of those cases relied on the Supreme Court's opinion in New York State Conference of Blue Cross Blue Shield Plans versus Travelers Insurance Company for that direct or significant relationship requirement. But in that case, the Supreme Court was addressing the meaning of related to in a much different context, ERISA and whether ERISA preempted state laws. I think the provision in question said something that ERISA preempts state laws on benefit plans. So the court noted in the Blue Cross Blue Shield case that related to is extremely broad and that they had to cabinet in to recognize the presumption against preemption. That doesn't apply here. This court standard has always been touch, simply touch on matters covered. I see that my time is up unless the court has any more questions. I don't see any. Thank you. Thank you, Ms. Carver. Thank you also, Mr. Pleskov. We appreciate both counsel's participation in argument before the court this morning. We will continue to study the briefing in the case and render decision in due course. Thank you.